UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER MANSFIELD,
        Plaintiff

v.

PITNEY BOWES, INC.,
        Defendant

C.A. NO. 12-10131-DJC

# FIRST AMENDED COMPLAINT AND JURY DEMAND

## PARTIES

1. Plaintiff Chris Mansfield ("Plaintiff") is a resident of Easton, Bristol County, Commonwealth of Massachusetts.

2. Defendant Pitney Bowes, Inc. ("Defendant") is a Delaware corporation with a principal place of business in Shelton, Connecticut. Pitney Bowes is a $5.6 billion company that employs 33,000 people worldwide and provides software, hardware, and services that integrate physical and digital communications channels.

## JURISDICTION AND VENUE

3. Venue is proper in this court due to the residence of the plaintiff and jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

4. Defendant employed Plaintiff as a commissioned sales representative, beginning in or about 2006, when Defendant acquired Plaintiff's employer, Ibis Consulting Inc., until Plaintiff's employment terminated, in or about August 2010.

1

5. As set forth in the 2009 and 2010 "Commission Plan(s)"in effect during Plaintiff's employment, Defendant agreed to pay Plaintiff a commission of 3% of all "billed revenue", and an additional bonus of 1% of the "billed revenue" for achieving "100% of [his] quarterly quota".

6. For the commission plan year spanning from January 1, 2010, to December 31, 2010, Defendant promised to pay Plaintiff monthly commissions "for projects that carry over from prior year until they are completed."

7. Throughout Plaintiff's employment, Defendant arithmetically determined the monthly commissions due Plaintiff based on Defendant's monthly billed revenue, multiplied by the 3% commission Defendant agreed to pay Plaintiff. The 2010 Commission Plan sets forth precise dates, on a monthly basis, when such commissions were to be paid. Defendant issued Plaintiff monthly commission checks based on this formula.

8. In 2008, Defendant assigned Plaintiff to increase the revenue of its Pitney Bowes Government Solutions ("PBGC") division. Plaintiff targeted his sales efforts on Nana Abogeye ("Abogeye") of Lockheed Martin, particularly on the government-related "Mega-3" project. Jim Miller ("Miller"), another salesman employed by Defendant, also worked on this project.

9. Based on Plaintiff's sales efforts, Lockheed Martin agreed to purchase services from Defendant, thereby generating revenue for Defendant. In accordance with the terms of the commission agreement between Plaintiff and Defendant, Defendant paid Plaintiff, on a monthly basis, 3% of the billed revenue to Lockheed Martin. Under his commission agreement, Miller received 1% of the billed revenue.

10. In December 2009, Abogeye told Plaintiff that the "floodgates are going to open," meaning that Lockheed Martin had an increased demand for electronic discovery services in connection with work it was performing for the Federal Deposit Insurance Corporation ("the FDIC project").

11. Abogeye asked Plaintiff if Defendant could handle the 26 terabytes of data Lockheed Martin would need to process for the FDIC project. Abogeye represented that such data would start coming in late January 2010 and continue through May 2010. Plaintiff helped ready Defendant in that regard and, with weekly meetings, ensured that Mr. Abogeye remained secure and confident that Defendant could manage the work, thus preventing Lockheed Martin from using a different vendor. Plaintiff's efforts were particularly important when Abogeye informed Plaintiff that the expected 26 terabytes of data required for the FDIC project had doubled, and expressed doubts about Defendant's capabilities to handle the increase. Plaintiff was able to convince Abogeye that Defendant could handle the increased capacity.

12. Plaintiff, Miller, and Plaintiff's supervisors knew that in order to assure Defendant's role in the FDIC project, Plaintiff was critical, due to the relationship Plaintiff had built with Abogeye. Both David Hutchinson, Vice President of the Division, and Perry Gile, also a Vice President, emphasized to Plaintiff on separate occasions that if he helped effect the sale, he would be well-rewarded under his commission agreement.

13. As a result of Plaintiff's efforts, Mr. Abogeye agreed to utilize Defendant's services for the FDIC project, which constituted a value contract worth approximately $10,000,000.00.

14. Under the terms of his agreement with Defendant, Plaintiff was entitled to be paid a commission of 3% of the revenue Defendant billed to Lockheed Martin, on a monthly basis. In accordance with this, each month, Defendant arithmetically determined the amount of commissions due Plaintiff based on its billed revenue to Lockheed-Martin, and issued Plaintiff a commission check. Plaintiff also met 100% of his quarterly quota with this sale, and was therefore entitled to an additional 1% of the billed revenue.

15. As a value contract, this project was the type that would continue to generate revenues for Defendant and commissions for the salesmen until its completion. Hutchison, Plaintiff's superior, has acknowledged this, admitting that Mansfield was to be paid on the project as long Defendant derived revenues from it.

16. Then, abruptly and without warning or without any claim that Plaintiff had done anything wrong, and while Defendant was deriving revenue from the project and knew it was going to continue to derive significant revenue from it, on February 17, 2010, Donald Poster, Sales Director for the East Region informed Plaintiff, verbally, and then in writing, that "[e]ffective March 1, 2010, you will no longer be involved in the Lockheed/FDIC account" and he would receive no commissions for revenue that came in on the "value contract" thereafter.

17. Indeed, although revenue on the project continued to go to Defendant on or after March 1, 2010, Defendant did not pay Plaintiff commissions on the billed revenue, but retained them. Defendant continued to pay a 1% commission to Miller.

18. Hutchison admitted to Plaintiff that he was removed from the Lockheed Martin account because Defendant simply wanted to avoid paying a "double commission" on the deal, and therefore, took out the higher paid commission salesperson

in order to retain the revenue. Notably, this $10 million value contract was later increased to $25 million. Defendant, however, continued to deprive Plaintiff of commissions on the project.

19. Plaintiff estimates he has suffered damages in excess of $500,000 as a proximate result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract - Failure to Pay Commissions

20. All allegations set forth herein are incorporated by reference.

21. Defendant agreed to pay Plaintiff a 3% commission on all billed revenue, on a monthly basis, and an additional 1% of the billed revenue if Plaintiff met 100% of his quarterly quota. Defendant agreed to pay commissions until such time as a project for which Plaintiff was due commissions was completed.

22. Plaintiff performed all conditions, covenants, and promises required of him to earn his 3% commission, including by convincing Lockheed Martin to utilize Defendant's services on the FDIC project. Moreover, Plaintiff's met 100% of his quarterly quota, thereby earning the additional 1% commission due him under the commission agreement.

23. As a result of Plaintiff's efforts, Defendant realized significant revenue, before and after Plaintiff's departure from employment.

24. Defendant breached its agreement, by removing Plaintiff from the Lockheed Martin account, and not paying him the 3% commission on billed revenue, or the 1% commission due him for meeting 100% of his quarterly quota, until the project ended, before and after Plaintiff's departure from employment with Defendant.

25. As a proximate result of Defendant's breach, Plaintiff has suffered harm, injury, and damages.

**COUNT II**
**Breach Of Contract/Breach Of The Implied Covenant**
**Of Good Faith And Fair Dealing**

26. Plaintiff realleges the facts above as if fully set forth herein.

27. Defendant agreed to pay Plaintiff a 3% commission on all billed revenue, on a monthly basis, and an additional 1% commission for meeting 100% of his quarterly quota. Defendant agreed to pay commissions until such time as a project for which Plaintiff was due commissions was completed.

28. Plaintiff performed in good faith as he was required under his agreement with Defendant, including by effecting sales with Lockheed Martin, as described above, which resulted in significant revenues for Defendant.

29. After Plaintiff performed under the agreement and earned the commissions Defendant promised to pay him, and Defendant began deriving revenue from Plaintiff's efforts, Defendant, in bad faith, removed Plaintiff from the Lockheed Martin account, to deprive him of the commissions it was obligated to pay him, including on the revenues Defendant generated on the FDIC project.

30. There is a covenant of good faith and fair dealing implied in all Massachusetts contracts.

31. Defendant breached the implied covenant of good faith and fair dealing in its agreement to pay Plaintiff commissions by removing him from the Lockheed Martin account so that it could deprive him of his commissions, and retain the commissions it owed him for its own benefit.

32. As a proximate result of Defendant's breach, Plaintiff has suffered harm, injury, and damages.

**COUNT III**
**Promissory Estoppel**

33. Plaintiff realleges the facts above as if fully set forth herein.

34. In making the aforementioned promises, assurances, and/or representations to Plaintiff, Defendant, by its agents, knew, or should have known, that Plaintiff would reasonably rely on its promises, assurances, and/or representations regarding its promise to pay commissions, and perform the work he performed, as described above. Defendant has not performed its promises, assurances, and representations that Plaintiff would be paid commissions for effecting sales with Lockheed Martin, and otherwise. Defendant has unjustly retained the commissions it promised to pay Plaintiff.

35. Injustice can be avoided only by enforcing Defendant's promises, assurances, and/or representations completely.

36. As a result of Defendant's failure to perform according to their promises, assurances, and/or representations, Plaintiff has sustained significant financial and economic losses and incurred reasonable attorneys' fees and costs, all to his damage, in an amount according to proof.

37. As a proximate result of Defendant's conduct, Plaintiff has suffered harm, injuries, and damages.

**COUNT IV**
**Unjust Enrichment/Quantum Meruit**

38. Plaintiff realleges the facts above as if fully set forth herein.

39. As alleged herein, Defendant knowingly and intentionally removed Plaintiff from the Lockheed Martin account so it would not have to pay him commissions on the revenue it realized from his work.

40. As a direct and proximate result of Defendant's conduct as alleged herein, Plaintiff has been deprived of commissions he earned by working for Defendant. Those unpaid commissions remain in Defendant's possession and control. As a result, Plaintiff has conferred a substantial monetary benefit on Defendant, which Defendant knew of, appreciated, accepted, and retained.

41. By way of Defendant's conduct, Defendant has been unjustly enriched, in an amount yet to be determined, to the detriment of Plaintiff, to the extent Defendant has failed to pay Plaintiff the commissions due Plaintiff. As such, Defendant's acceptance and retention of the monetary benefit alleged herein has occurred under circumstances which make it inequitable if a restitution payment is not made to Plaintiff to disgorge Defendant of ill-gotten profits derived from its failure to pay Plaintiff the commissions due and owing him. Plaintiff reasonably expected to be paid by Defendant for this/these commissions but was not.

42. As a proximate result of Defendant's conduct, Plaintiff has suffered harm, injuries, and damages.

**COUNT V**
**Misrepresentation (Intentional and Negligent)**

43. Plaintiff realleges the facts above as if fully set forth herein.

44. Defendant, through its duly authorized agents has made intentional and/or negligent misrepresentations to Plaintiff about payment for his services, including that it would pay Plaintiff 3% commission on all revenue billed, and a 1% commission on billed

revenues if he met his quarterly quota, and to pay him commissions until the projects for which he was entitled commissions ended.

45. Plaintiff relied on those representations to his detriment, including by performing the work described above, for which he reasonably believed, he would be paid commissions.

46. As a proximate result of Defendant's conduct, Plaintiff has suffered harm, injuries, and damages.

## COUNT VI
### Failure To Pay Wages
### Violation Of G.L. c. 149, § 148

47. Plaintiff realleges the facts above as if fully set forth herein.

48. The commissions due Plaintiff are "wages" within the meaning of G.L. c. 149, § 148. Plaintiff's commissions are wages because they could be mathematically determined under his commission agreement, and under terms of the agreement, due and owing each month, until the end of the projects for which he was entitled to commissions.

49. Under G.L. c. 149, § 148, Defendant was and has been obligated to pay Plaintiff all commissions to which he was entitled once they were or could be mathematically determined.

50. Defendant has violated G.L. c. 149, § 148 by failing to pay Plaintiff commissions due and owing him, including for commissions due and owing for the length of the FDIC project, both before and after Plaintiff's departure from employment.

51. As a proximate result of Defendant's conduct, Plaintiff has suffered harm, injuries, and damages.

52. Pursuant to G.L. c. 149, § 150, Plaintiff has been authorized by the Massachusetts Attorney General to bring this claim as a private right of action. (Exhibit A.)

**JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follow:

A. Judgment awarding Plaintiffs all unpaid commissions, treble damages, attorneys' fees and costs under G.L. c. 149, § 150;

B. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

C. All such other and further relief to which Plaintiff may show himself to be justly entitled.

## JURY DEMAND

A trial by jury is demanded on all counts so triable.

                        Respectfully submitted,

                        PLAINTIFF, CHRISTOPHER MANSFIELD

                        By his attorney,

                        s/Daniel W. Rice
                        Daniel W. Rice, BBO # 559269
                        GLYNN, LANDRY,
                        & RICE, LLP
                        25 Braintree Hill Office Park, Suite 408
                        Braintree, Massachusetts 02184
                        (781) 849-8479 (office)
                        (781) 964-8377 (mobile)
                        daniel.rice@glhrlaw.com

Dated: June 25, 2012

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 25, 2012

                        /s/ Daniel W. Rice
                        Daniel W. Rice

EXHIBIT A



# The Commonwealth of Massachusetts
# Office of the Attorney General

One Ashburton Place
Boston, Massachusetts 02108

Martha Coakley
Attorney General

May 31, 2012

(617) 727-2200
www.mass.gov/ago

Atty. Daniel W. Rice
Glynn, Landry & Rice, LLP
25 Braintree Hill Office Park, Suite 408
Braintree, MA 02184-2605

Re: Private Right of Action – Christopher M. Mansfield

**<u>Authorization for Immediate Private Suit – Pitney Bowes Legal Solutions</u>**

Dear Atty. Rice:

Thank you for contacting the Office of the Attorney General's Fair Labor and Business Practices Division.

This letter is to inform you that we have carefully reviewed the complaint and have determined that the proper resolution of this matter may be through a private suit in civil court. Accordingly, we are authorizing you to pursue this matter through a civil lawsuit immediately.

Massachusetts General Laws, chapter 149, sec. 150, and chapter 151, secs. 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws. If you elect to sue in civil court, you may bring an action on your clients' behalf and others similarly situated, and they may obtain injunctive relief, treble damages for any loss or wages and other benefits, as well as the costs of litigation and reasonable attorneys' fees.

Without making a judgment on the merits of the complaint, this correspondence represents this office's written assent to sue and grants you the authority to pursue this matter against the employer *as well as against the president, treasurer of the corporation and any officers or agents having the management of such corporation,* immediately, as permitted by Massachusetts General Laws chapters 149 and 151. This office will not take further enforcement action at this time.

Thank you for your attention to this matter.

Sincerely,

Bruce Trager
Assistant Attorney General
Fair Labor and Business Practices Division
(617) 727-2200, extension 2336

BT/mm