UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER MANSFIELD, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 12-10131-DJC |
| PITNEY BOWES, INC., ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                              March 12, 2013

## I.     Introduction

Plaintiff Christopher Mansfield ("Mansfield") brings suit against his former employer, Defendant Pitney Bowes, Inc. ("Pitney Bowes"), alleging that the company failed to pay certain sales commissions that Mansfield allegedly earned as a sales representative. Am. Compl., D. 18 ¶¶ 4, 17. Mansfield has asserted claims for breach of contract for failure to pay wages (Count I), breach of the implied covenant of good faith and fair dealing (Count II), promissory estoppel (Count III), unjust enrichment/quantum meruit (Count IV), misrepresentation (Count V) and a claim of failure to pay wages under the Massachusetts Wage Act, Mass. Gen. L. c. 149, § 148 (the "Wage Act") (Count VI). D. 18 ¶¶ 20-52. Pitney Bowes has moved to dismiss Counts I through V (collectively, the "Common Law Claims") as "supersede[d]" by the Wage Act. D. 23. For the reasons stated in this memorandum, that motion is DENIED.

## II.    Standard of Review

This Court accepts all factual allegations that Mansfield asserts in his amended complaint, D. 18, as true for the purposes of deciding this motion to dismiss. Ocasio–Hernández

1

v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). The Court must determine if the well-pled facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

### III. Factual Background

Mansfield was a commissioned sales representative for Pitney Bowes from 2006 until 2010. D. 18 ¶ 4. Under the terms of his 2009 and 2010 commission agreements with Pitney Bowes, Mansfield was entitled to be paid a commission for a project for as long as Pitney Bowes derived revenue from that project. D. 18 ¶¶ 5-6, 15-16. Due to Mansfield's efforts, in December 2009 or shortly thereafter, Pitney Bowes entered into a sales contract with customer Lockheed Martin that was estimated to be worth approximately $10,000,000 over the life of the contract ("Customer Contract"). D. 18 ¶¶ 10-13. On February 17, 2010, Pitney Bowes informed Mansfield that, as of March 1, 2010, he would no longer receive commissions for revenue the company received from the Customer Contract. D. 18 ¶ 16. Although the Customer Contract continued to generate revenue for Pitney Bowes after that date and later increased in value to $25,000,000, Mansfield was not paid commissions on revenue received by Pitney Bowes after that date. D. 18 ¶¶ 17-18. Mansfield claims damages in excess of $500,000 and has sued to recover these allegedly owed commissions, D. 18 ¶ 19, asserting both the Common Law Claims and a violation of the Massachusetts Wage Act, D. 18 ¶¶ 20-52.

### IV. Discussion

Pitney Bowes has moved to dismiss, alleging that the "Massachusetts Wage Act [Mass. Gen. L. c. 149, § 148] provides the exclusive, comprehensive vehicle for the recovery of any allegedly unpaid commissions which Plaintiff asserts in this action and supersedes all of his derivative Common Law Claims." Def. Mot., D. 23 at 1. Pitney Bowes argues that the Common

Law Claims "fail as they are wholly duplicative of [the] Wage Act Claim." Def. Mem., D. 24 at 6. Mansfield replies that his allegations are pled in the alternative, and in any case, that Mass. Gen. L. c. 149, § 148 does not preempt the common law theories that he presses here. Pl. Opp., D. 27 at 2-3. For the reasons stated below, the Court finds that Mansfield's Common Law Claims are not superseded or otherwise preempted by the Wage Act.

The Wage Act, Mass. Gen. L. c. 149 § 148, provides "so far as apt" for the payment of commissions on at least a weekly or biweekly basis, or on a monthly basis for certain classifications of employees who so elect.[1] "The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.'" Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012); see generally Scott C. Moriearty, John F. Adkins, Laurie F. Rubin & Daniel J. Jackson, 45 Massachusetts Practice, Employment Law, §§ 14.2-14.3 (2d ed. 2007). The applicable portion of Mass. Gen. L. c. 149 § 150 sets out the remedy for "[a]n employee claiming to be aggrieved by a violation of [§ 148]."[2]

---

[1] Mass. Gen. L. c. 149, § 148 states in relevant part:

Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . and provided, further, that employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general and employees whose salaries are regularly paid on a weekly basis or at a weekly rate for a work week of substantially the same number of hours from week to week may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly . . . . This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty.

[2] Mass. Gen. L. c. 149, § 150 states in relevant part:

## A. Whether Mass. Gen. L. c. 149 § 148 Provides the Exclusive Remedy for Recovery of Commissions Depends on Whether the Statute Is "Intended to Cover the Whole Subject to Which It Relates"

Under Massachusetts law, where a statute is "seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded." Sch. Comm. of Bos. v. Reilly, 362 Mass. 334, 338 (1972) (quoting Sch. Comm. of Lowell v. Mayor of Lowell, 265 Mass. 353, 356 (1928)). The Supreme Judicial Court in Sch. Comm. of Bos. interpreted this language and provided two scenarios where a common law remedy does not exist due to the existence of a statutory remedy. The first scenario occurs when the legislature in the enactment of a statute indicates that the "enactment was intended to restrict previously existing common law remedies." Sch. Comm. of Bos., 362 Mass. at 338-39. For example, the statute creating the cause of action for unlawful discrimination also states that it "shall exclude any other action, civil or criminal, based on the same grievance." Mass. Gen. L. c. 151B, § 9.

The second scenario occurs when the legislature creates a new right or duty that "is wholly the creature of statute [and] does not exist at common law." Sch. Comm. of Bos., 362 Mass. at 338 (quoting Sch. Comm. of Lowell, 265 Mass. at 357). In that second case, there is no common law remedy to supplant. Accord Mello v. Stop & Shop Cos., 402 Mass. 555, 557 & n.2 (1988) (considering whether to recognize a new basis for common law liability and noting that "no common law rule is needed [where] the Legislature has also prescribed a statutory remedy"

---

An employee claiming to be aggrieved by a violation of [§ 148] . . . may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees.

and citing six examples, including "G.L. c. 149, § 148A (1986 ed.), providing that no employee shall be penalized for seeking rights under the wage and hour provisions of G.L. c. 149").

A third scenario occurs when a statutory remedy is created in a manner that is compatible with an existing common law remedy. "It is well established that 'an existing common law remedy is not to be taken away by statute unless by direct enactment or necessary implication.'" Eyssi v. City of Lawrence, 416 Mass. 194, 201 (1993) (quoting Ferriter v. Daniel O'Connell's Sons, 381 Mass. 507, 521 (1980)). "Moreover, '[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed.'" Eyssi, 416 Mass. at 194 (quoting Riley v. Davison Constr. Co., 381 Mass. 432, 438 (1980). See, e.g., Sch. Comm. of Bos., 362 Mass. at 334 (holding that "[t]here is nothing in the enactment of St. 1965, c. 763, [§] 2, adding [§§] 178G-178N to c. 149, which would warrant the conclusion that this enactment was intended to restrict previously existing common law remedies for breach of contract in the employer-employee context").

**B.    Mass. Gen. L. c. 149 §§ 148, 150 Do Not Provide An Exclusive Remedy For the Recovery of Allegedly Unpaid Commissions**

The case here is an example of the third scenario just described. Neither Mass. Gen. L. c. 149, § 148, nor § 150, facially state an intent to supplant common law actions or remedies. Nor is it clear that the language of Mass. Gen. L. c. 149 § 148—which narrowly could be viewed as a rule about timing of payments—necessarily "covers" all variations of common law claims for nonpayment. Pitney Bowes cites a number of cases in support of its proposition that the Wage Act "supersede[s]" the Common Law Claims. The most relevant of these cases is Lipsitt v. Plaud, No. 10-CV-2020-D, at *2 (Mass. Super. Ct. Feb. 7, 2011) (unpublished but available at D. 24 Exh. 1 at 2), where a plaintiff brought a claim seeking his allegedly unpaid salary on various theories including breach of contract and violation of Mass. Gen. L. c. 149, §§ 148, 150. The

defendants asserted that the common law claims were preempted by the statute. Id. at *3. The motion judge noted the "scant precedent on whether the Wage Act preempts common law claims" and looked for guidance to other superior court cases that dealt with the "Wrongful Termination" statute, Mass. Gen. L. c. 149, § 148A and the "Tips Act," Mass. Gen. L. c. 149, § 152A. After reviewing those cases, the judge held that "[i]n enacting the Wage Act, the legislature created a comprehensive vehicle for recovering unpaid wages. . . . Because the Legislature created this comprehensive remedy, Lipsitt's common law claims for back wages are precluded." Id. at *3.

Having reviewed the cases cited by the Lipsitt court, as well as additional cases cited by the parties and cases interpreting Mass. Gen. L. c. 149, §§ 26-27 (the "Prevailing Wage" statute[3]), the Court concludes that other statutory provisions are not necessarily analogous to the situation here, where each cited is an example of the "second scenario" described above where the legislature creates a new right or duty that "is wholly the creature of statute [and] does not exist at common law." Sch. Comm. of Bos., 362 Mass. at 338. Cases involving the Tips Act, the Wrongful Termination statute and the Prevailing Wage statute are situations where an employee would have no recognized cause of action but for the statutes' imposition of obligations on employers. See, e.g., DePina v. Marriott, Suffolk Civ. No. 2003-5434G, 2009 WL 8554874, at *13 (Mass. Super. Ct. July 28, 2009) (noting that the "right to have service charges imposed by Marriott distributed only to certain categories of employees is created by the Tip[s] Act and did not exist at common law," making the plaintiff's common law claims "mere

---

[3] The Massachusetts "Prevailing Wage" statute, Mass. Gen. L. c. 149, §§ 26-27 creates the concept of "prevailing wages" for certain types of jobs and imposes a statutory obligation that the schedule of prevailing wages "shall be made a part of the contract for said works and shall continue to be the minimum rate or rates of wages for said employees during the life of the contract." Mass. Gen. L. c. 149 § 27. The statute creates a private right of action identical to that provided by Mass. Gen. L. c. 149 § 150. Id.

surplusage because they needlessly duplicate the remedies available under the statute); Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 557 & n.2 (1998) (citing Wrongful Termination statute as example where "no common law rule is needed because the Legislature has also prescribed a statutory remedy"); George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 188 (2012) (holding that the Prevailing Wage "statute creates a mandatory wage term, imposed on employers by law [that] did not exist at common law"). Many, but not all courts, writing on the issue have found statutory remedies exclusive in those situations.[4] Here, in contrast, an employee could choose to challenge an employer's failure to pay timely wages as mandated under Mass. Gen. L. c. 149 § 148 and in doing so, may seek the remedy provided by Mass. Gen. L. c. 149 § 150; the employee could also plead a common law breach of contract based on his or

---

[4] Regarding the Tips Act, see Masiello v. Marriott Int'l, Inc., Suffolk Civ. No. 2006-5109G, 2010 WL 8344105, at *3 (Mass. Super. Ct. May 11, 2010) (Tips Act does not preempt common law claims); Mouiny v. Comm. Flats Dev. Corp., Suffolk Civ. No. 2006-1115, at *15 (Mass. Super. Ct. Aug. 18, 2008) (unpublished but available at D. 24 Exh. 1 at 16) (Tips Act does preempt common law claims); Hernandez v. Hyatt Corp., Suffolk Civ. No. 2005-0569, at *8 (Mass. Super. Ct. May 4, 2009) (unpublished but available at D. 24 Exh. 1 at 33) (Tips Act does preempt common law claims); Godt v. Anthony's Pier 4, Inc., Suffolk Civ. No. 2007-3919, at *11 (Mass. Super. Ct. Mar. 24, 2009) (unpublished but available at D. 24 Exh. 1 at 43) (Tips Act does preempt common law claims).

Regarding the Prevailing Wage Act, see Tomei v. Corix Utils. (U.S.) Inc., No. 07–cv–11928–DPW, 2009 WL 2982775, at *19 (D. Mass. Sept. 14, 2009) (Prevailing Wage Act does not preempt common law claims but noting that "[n]either party has cited, and I have not found, any Massachusetts cases which confront the issue of preclusion for the prevailing wage statute").

Regarding the Overtime Wage Act, see Spears v. Miller, No. 1683, 2006 WL 2808145, at *1 (Mass. App. Div. Sept. 26, 2006) (Overtime Wage Act does not preempt common law claims).

Regarding the Wrongful Termination statute, see Dobin v. CIOView Corp., No. 2001-00108, 2003 WL 22454602, at *9 (Mass. Super. Ct. Oct. 29, 2003) (no need to create a common law remedy where statutory remedy exists for "wrongful termination").

Regarding the Wage Act, see Yelle v. United Water Springfield LLC, 795 F. Supp. 2d 169, 167-77 (D. Mass. 2011), (opining without discussion that "an employee's exclusive remedy for alleged failure to pay wages is [Mass. Gen. L. c. 149, § 150]").

7

her agreement with an employer and other common law claims against same. That is what Mansfield has done here.[5]

The Court also has considered Pitney Bowes's argument that the "Massachusetts Legislature's intent to supersede common law claims that arise from violations of the Massachusetts Wage Act is also evident from the fact that the Legislature imposed a three-year statute of limitations for such violations [where i]n contrast, Plaintiff's breach of contract and unjust enrichment/quantum meruit claims are subject to a six-year statute of limitations." D. 24 at 7 n.3. Pitney Bowes argues that the "coexistence of these common law remedies would conflict with the Massachusetts Legislature's comprehensive statutory scheme." But the statute can also be seen to simply create an alternate remedial option: the statute creates a right to treble damages, attorneys' fees and costs that does not exist in the common law and balances this right with a shortened recovery period. See Melia, 462 Mass. at 171 n.8 (describing history of remedies and legislative action modifying remedy). The Court does not discern that the availability of an alternative remedy is a fact by itself sufficient to show the legislative intent to repeal an existing cause of action. Eyssi, 416 Mass. at 200 (opining that "[h]ad the Legislature

---

[5] In his opposition to Pitney Bowes's motion to dismiss, Mansfield argues that he should be allowed to plead his claims in the alternative, in part since Mass. Gen. L. c. 149, § 150 may not be applicable "because commissions that might be 'contingent,' that is, deemed payable only on the occurrence of an event or satisfaction of a condition, might not be deemed 'definitely determined' or 'due and payable.'" D. 28 at 11-12. The Massachusetts Appeals Court has rejected the general proposition that a "contingent" commission cannot be "definitely determined" and "due and payable." Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 777 (2007) (noting that "the entire paragraph in the wage act addressing commissions . . . would prove meaningless if commissions contingent upon another event were excepted. Virtually all commissions are subject to a contingency, such as meeting a sales quota"). It is premature at this juncture to decide whether Mansfield's allegedly unpaid commissions here are "definitely determined" and "due and payable." But if on a more established record it became clear that the Wage Act did not apply to some or all of Mansfield's allegedly unpaid commissions, the premature dismissal of the Common Law Claims could leave him no avenue for relief as to the affected commissions.

intended the [statutory] provisions . . . to abrogate the common law rights . . . we think it would have done so explicitly"); Spears 2006 WL 2808145, at *2 (finding that a shorter statute of limitations period relevant to overtime statute, Mass. Gen. L. c. 151, § 20A, applies only to "those [actions] seeking treble damages and attorney's fees" and noting that "when our Legislature intends to make a statutory remedy exclusive, it has done so by explicit language"); cf. Crocker v. Townsend Oil Co., Inc., 464 Mass. 1, 7-8 (2012) (holding that plaintiffs' overtime claims, while barred by one statute's two year limitation period, may nonetheless be brought under alternative statute with three year statute of limitations); DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 760 & 763-769 (2007) (finding that the Wage Act applied to a plaintiff's claim for commissions where the plaintiff also alleged breach of contract for same, though not addressing interaction between statutory and common law claims); Krause v. UPS Supply Chain Solutions, Inc., No. 08-cv-10237-DPW, 2009 WL 3578601, at *13-15 (D. Mass. Oct. 28, 2009) (granting summary judgment as to Mass. Gen. L. c. 149, § 148 claims on allegedly owed commissions, but denying summary judgment as to breach of the implied covenant of good faith and fair dealing, though not addressing interaction between statutory and common law claims).

## V. Conclusion

For the reasons given above, the Court DENIES Pitney Bowes's motion to dismiss the Common Law Claims, Counts I through V, under Fed. R. Civ. P. 12(b)(6).

**So Ordered.**

/s/ Denise J. Casper
United States District Judge